GEORGE R. MYERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94764. Promulgated August 28, 1940.

*Albert Grossman, Esq.,* and *Charles Goldring, C. P. A.,* for the petitioner.

*Byron M. Coon, Esq.,* for the respondent.

642

**OPINION.**

SMITH: In his petition to the Board the petitioner alleges, first, that the liquidation of the Automotive Sales Co. and Automotive Sales, Inc., in 1935 was a tax-free reorganization, and, second, that in any event the gain, if any, from the liquidation of the 145¼ shares of Automotive Sales Co. stock and 15½ shares of Automotive Sales, Inc., stock which he transferred to his wife under the settlement agreement of May 29, 1933, is not taxable to him.

The first of these contentions was waived by the petitioner at the hearing before the Board, leaving for our determination only the question whether the gain on the liquidation of the 145¼ shares of Automotive Sales Co. stock and the 15½ shares of Automotive Sales, Inc., stock is taxable to the petitioner. The amount of the gain from the liquidating distribution on said shares has not been put in dispute in this proceeding. Petitioner's protest against the additional assessment is based entirely upon his contention that he was not the owner of the shares of stock in question at the time the liquidating distribution was made.

The respondent has taxed the gain on the distribution to the petitioner on the ground that the legal title to the stock in escrow was his at the time of the liquidation. This conclusion rests in turn on the fact that certain important incidents of equitable ownership in the stock were then in the petitioner and on the respondent's interpretation of the written agreement of the parties. We do not think the respondent can be sustained in his position.

The decision of the issue before us has been made by the courts to depend on ownership of the income-producing property at the time of the gain. In each instance primary emphasis has been placed

on the varying circumstances of separate cases as they illumine questions of title to the property involved. See *Commissioner* v. *Swift*, 54 Fed. (2d) 746; *Robert L. Stearns*, 24 B. T. A. 1013; *Theodore R. Gerlach*, 27 B. T. A. 565. See also *Max Viault*, 36 B. T. A. 430. For dominion over, or possession of, that property see *Brunton* v. *Commissioner*, 42 Fed. (2d) 81; *Anna L. Dirksen, Executrix*, 24 B. T. A. 1152. Cf. *Ruml* v. *Commissioner*, 83 Fed. (2d) 257; *Robert L. Stearns*, *supra;* and as to the method of sale as it may affect the realization of the gain sought to be taxed, see *Theodore R. Gerlach*, *supra; Dakota Creek Lumber & Shingle Co.*, 26 B. T. A. 940.

In the instant case it appears to us, contrary to respondent's position, that the title to the stock in escrow was in Rhoda A. Myers. The determination of this question must be made largely to depend on the intention of the parties as evidenced by their method of dealing and on the surrounding circumstances. It is plain from the agreement of May 29, 1933, that the intent of the parties was that the petitioner should buy out Rhoda A. Myers' interest in the community at an agreed price. It seems clear, moreover, that they were not satisfied with the more direct method which might have been followed of the relinquishment by the wife of her interest in consideration of the agreed price, that interest to be pledged as security for the performance of the agreement. Rather, the method adopted was first to place title to the stock in Rhoda A. Myers individually, to reflect this transfer on the corporate books, and to execute an agreement for their sale through a trustee. The significant difference between these methods is that under the one utilized Rhoda A. Myers was enabled to reserve the power to repossess the securities in kind on petitioner's default, whereas under the alternative method she would hold only a power to levy on the stock and to derive therefrom sufficient funds to supply the balance owing. Cf. *Theodore R. Gerlach*, *supra; Walter M. Hort*, 39 B. T. A. 922.

The incorporation in one instrument of these two transactions requires that they be construed together and from a careful study of the instrument we think it clear that it was the intention of the parties that title to the stock was to remain in Rhoda A. Myers until the completion of the contract. Corroborative evidence is found in the fact that the stock remained on the books of the corporation in the name of Rhoda A. Myers and that in the liquidation of the corporation she was treated as the owner.

The reservation in the agreement, even though it be by inference, of the power to "sell, assign, transfer or hypothecate" the stock on petitioner's default shackles the passage of title with a contingency and makes it evident that performance of the agreement was a condition precedent to assumption of title by the purchaser. See *Solomon Silberblatt*, 28 B. T. A. 73.

Respondent argues, nevertheless, that the petitioner was invested with the significant powers to vote the stock while in escrow and to receive the dividends paid thereon. These privileges, it is said, are the substance of possession and ownership and for our purposes must override drier considerations. We think, however, that the execution of proxies to the petitioner is explained by the fact that the corporations were small concerns, of which the petitioner was the president, and the purpose of this provision was largely to facilitate the operation of the corporations. The assignment of the dividends, in view of the fact that the petitioner was to pay interest upon the debt, loses significance.

The intention of the parties must control or even override the terms of the contract if properly evidenced. See *East Coast Oil Co., S. A.*, 31 B. T. A. 558; affd., 85 Fed. (2d) 322; certiorari denied, 299 U. S. 608. In the instant case some importance attaches to the fact that the terms of the instrument appear to bear out our conclusion that the parties contemplated no instant sale. The contract provides that Rhoda A. Myers "agrees to sell" and petitioner "agrees to purchase" the stock, marking this agreement as a contract "to sell" and not a contract "of sale." Cf. *Jacob Carp*, 31 B. T. A. 541, where actual assignment to the buyer of the stock in escrow was considered more significant of the parties' intention than the terms of the instrument.

We think, in addition, that paragraph five of the agreement, by which it is provided that "all property heretofore or hereunder vested in Rhoda A. Myers * * * shall be vested in her as her sole and separate estate, free and clear of any community property or other interests or claim therein, upon the part of George R. Myers excepting only as to the *rights and privileges herein granted* to him by this Agreement and to the voting power of the certain stocks hereinbefore mentioned and set forth", has some significance. (Italics supplied.) The instrument is described as granting to petitioner only "rights and privileges" and does not attempt to convey to him an "interest" which must characterize an actual passage of title or true equitable ownership. It should be noted, moreover, that no course was followed which could be interpreted as entailing payment for the stock at the time of making the agreement. No notes were executed as evidence of the payments to be made. Cf. *Jacob Carp, supra.*

The situation here present differs from those wherein dealings under which a loss has been definitely incurred have not been carried through to a conclusion. See *Hoffman* v. *Commissioner* (C. C. A., 2d Cir.), 71 Fed. (2d) 929; *Ruml* v. *Commissioner, supra.* Cf. *Stiver* v. *Commissioner*, 90 Fed. (2d) 505.

**646**

The present case likewise appears to us to differ from *Long* v. *United States*, 66 Ct. Cls. 475, where the payment of dividends during the taxable year reduced then the obligation of the taxpayer to pay principal and interest on the stock-purchase debt. The taxpayer there realized a gain during the year in question.

From these varied considerations we have reached our conclusion that title to the stock in escrow was not in the petitioner during the taxable year, that the reservation of the right to dispose of the stock on petitioner's default placed a substantial contingency blocking the passage of that title, and that by the terms of the instrument itself it is apparent that the petitioner was not the owner of the stock. In the light of these facts we hold that respondent's determination that the petitioner realized gain on the liquidating distribution was error.

*Decision will be entered for the petitioner.*