Charles H. Pratt and Helen A. Pratt v. Commissioner.
Pratt v. Commissioner
Docket No. 490.
United States Tax Court
1944 Tax Ct. Memo LEXIS 263; 3 T.C.M. (CCH) 423; T.C.M. (RIA) 44144; May 6, 1944
*263 Eldridge Hart, Esq., Winter Park, Fla., for the petitioners. E. M. Woolf, Esq., for the respondent. STERNHAGEN Findings of Fact and Memorandum Opinion STERNHAGEN, Judge: The Commissioner determined deficiencies of $714.23 and $992.12 in petitioners' income tax for 1940 and 1941, respectively. As to both years, a deduction for loss was disallowed on the ground that the sale had been completed in 1939; and for 1940 a deduction was disallowed on the ground that trustees' fees were not ordinary and necessary expenses. A claim was made in an amended petition for a deduction of trustees' fees paid in 1941. The petitioners filed joint returns on the cash basis for 1939, 1940 and 1941, in the District of Florida. [The Facts] In 1939, the petitioner was the owner of 5,822 and his wife 1,000 shares of Casa Pratt, a corporation organized by petitioner to take over a business in Brazil which he had been operating individually. It sold business machines. Upon organization Pratt acquired all the 2,000 shares issued, except qualifying shares, in exchange for the assets of the business, the value of which was about $500,000. Thereafter, a stock dividend increased the number of shares to *264 5,000 and again to 10,000, which was the number of outstanding shares in 1939. Thus, the cost to Pratt of each of the original 2,000 shares was $250, and after the two stock dividends the proportionate cost was $50 a share. Pratt, then in New York, wanted to retire from the business and a plan was devised to enable him to sell and his employees in Brazil to buy his shares as they should be able to pay for them, which they expected to do principally with dividends. Under Brazilian law an escrow agreement is not recognized and it is necessary that the shares be transferred in possession and record ownership to one who would be the custodian and vote the shares until the prospective purchasers should pay for them. An agreement was made between Pratt and his wife, vendors, and the Nardelli Corporation, a Brazilian corporation, purchaser, under the terms of which the shares were sold to Nardelli at par value, Rs.500 $ 000, Brazilian currency, per share, a total of Rs.3.411:000 $ 000. The price was to be paid at such time, commencing in 1939, and in such amounts that the average amount paid for each year should be no less than Rs.120:000 $ 000. The agreement further provided for the immediate *265 and concurrent hypothecation and pledge of the shares to the vendors in guarantee of the payments contemplated, the hypothecation and pledge to be registered in the corporate books of Casa Pratt, in accordance with the requirements of Brazilian laws, and that the vendors release from the hypothecation and pledge the number of shares paid for each year. It further provided that in the event of default the vendors could, if they so desired, repurchase and purchaser agreed to sell a sufficient number of additional shares which added to those repossessed would give then 51 per cent of the shares outstanding. The shares were transferred in possession to Nardelli and registered on the Casa Pratt books in it name and immediately pledged in favor of the vendors. Pursuant to the agreement, shares were paid for and released by petitioners and they received amounts therefor as follows: Year
No. of Shares
Amount Received
1939
720
$16,911.25
1940
606
14,014.00
1941
533
12,260.30
Because the agreement between Pratt and Nardelli in 1939 was in terms of a sale of the shares to Nardelli the Commissioner regards it as evidence of a consummated sale in 1939 of all 6,822 shares for *266 the price fixed in the agreement, with the consequence of a realization of loss in that year and a necessary disallowance of loss in the later years. The evidence clearly shows, however, that as between Pratt and Nardelli there was not an actual sale but a contract purporting to sell and giving title to Nardelli for the purpose of meeting the necessities of Brazilian law, which required record ownership of corporate shares for voting purposes and provided no such method as an escrow while title was retained in the vendor. The form of an outright sale was used, but the parties knew it was but a form and did not represent the actual transaction. Indeed, as the transaction was actually carried out the shares were not bought and paid for by Nardelli in 1939, but were bought in smaller lots and paid for pro tanto by the employees of the Casa Pratt business. See Solomon Silberblatt, 28 B.T.A. 73; George R. Myers, 42 B.T.A. 640, 644. Even if full recognition were to be given to the written contract as establishing a sale to Nardelli, it would still fall short of establishing that the Pratts sustained a loss in 1939 from *267 the sale of the entire 6,822 shares. For the Pratts made their return on a basis of cash receipts, and they did not in 1939 receive the proceeds from the sale of all the shares but only from the sale of 720 shares. The loss on the sale of 606 shares occurred in 1940 and of 533 shares in 1941. On the sale of those shares the losses were deductible in the years when they were sustained. However, the measure of the taxpayers' losses was different from that used by them on their returns. They did not give proper consideration to the proliferation of the original shares through the two stock dividends and the consequent diminution of the original cost of $500,000 among the ultimate 10,000 shares outstanding. The original cost of $250 per share in 1920 was spread over five shares in 1939 and after, so that the loss on each share sold in 1940 and 1941 was the difference between the cost basis of $50 and the amount received. In each instance, the loss was a long term capital loss upon the sale of property and only 50 per cent of the loss is deductible. The taxpayers claim deductions in 1940 and 1941 for amounts said to have been paid as trustees' or custodians' fees, but the evidence is *268 not sufficient to establish the payments or their character under the statute. The deductions have not therefore been supported and may not be allowed. Decision will be entered under Rule 50.